UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ANDREW J. RUSCITO,

    Plaintiff,

vs.                                                           Case No. 3:08-cv-518-J-MCR

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

# MEMORANDUM OPINION AND ORDER[1]

This case is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits on December 9, 2005, alleging an inability to work since February 15, 1998. (Tr. 138-140). The Social Security Administration denied this application initially and upon reconsideration. (Tr. 64-66, 71-72). Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ") on November 16, 2006 (Tr. 73, 17-29). This hearing was continued to allow Plaintiff to gather additional earnings information for determination of his date last insured. A second hearing was held on May 8, 2007. (Tr. 30-59). On September 26, 2007,

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 8).

1

the ALJ issued a decision finding Plaintiff not disabled. (Tr. 7-16). On November 9, 2007, Plaintiff filed a Request for Review by the Appeals Council (Tr. 5-6), and on April 16, 2008, the Appeals Council denied that request. (Tr. 2-4). Accordingly, the ALJ's September 26, 2007 decision was the final decision of the Commissioner. Plaintiff timely filed a Complaint in the U.S. District Court on May 20, 2008. (Doc. 1).

## II.   NATURE OF DISABILITY CLAIM

### A.   Basis of Claimed Disability

Plaintiff claims to be disabled since February 15, 1998, due to shoulder and back problems. (Tr. 186).

### B.   Summary of Evidence Before the ALJ

On the date the ALJ's decision was issued, Plaintiff was fifty-two years old. (Doc. 9, p. 2). He has an education up to and including three years of college (Tr. 193) and past relevant work experience as a clerk/receptionist, manager, and owner of a home improvement business. (Tr. 188). Plaintiff's relevant medical history is discussed at length in the ALJ's decision and therefore, will only be summarized here. As the instant record is voluminous, this Court will focus its summary on the medical history prior to Plaintiff's date last insured, March 31, 2000.[2]

In June 1986, Plaintiff presented to the naval hospital in Bethesda, Maryland with left neck, shoulder, and abdominal pain. (Tr. 307). It was alleged Plaintiff's pain started after

---

[2] The Court recognizes that evidence post-dating the insured status date "may be relevant and properly considered if it bears 'upon the severity of the claimant's condition before the expiration of his or her insured status." Ward v. Astrue, 2008 WL 1994978, *4 (M.D. Fla. May 8, 2008) (citing Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984) and Cooper v. Comm'r of Soc. Sec., 277 F.Supp.2d 748, 754 (E.D. Mich. 2003)).

2

dragging a cable, presumably for work. Id. Upon examination, Plaintiff was diagnosed with a herniated nucleus pulposus at C5-6. Id.

On September 17, 1998, Plaintiff consulted with doctors from North Florida Orthopaedics, Sports Medicine and Rehabilitation ("North Florida Orthopaedics") regarding right shoulder pain. (Tr. 311-13). During the initial consultation, Plaintiff indicated his pain began after he fell in July of 1998 and worsened after suffering a roller skating injury. (Tr. 313). Upon physical examination, Dr. Peter Riggs, PA-C noted Plaintiff exhibited an active range of motion with no visible atrophy of the right shoulder; however, Dr. Riggs did notice considerable crepitus on the range of motion. Id. After reviewing x-rays of Plaintiff's right shoulder, Dr. Riggs diagnosed Plaintiff with aseptic necrosis of the humerus bone and a pathologic fracture of the humerus. Id.

Plaintiff again presented to Northeast Florida Orthopaedics on September 30, 1998. (Tr. 311). At this time, Plaintiff reported to Dr. Richard Grimsley, M.D. that he had been suffering from right shoulder pain for three years and that the pain was best relieved by Tylenol. Id. Dr. Grimsley noted Plaintiff had regained his motion and basic function. Id. Upon physical examination, Plaintiff exhibited a nearly full range of motion in his right upper extremity. Id. After reviewing a previous MRI, Dr. Grimsley opined Plaintiff suffered from aseptic necrosis of the humerus bone and a pathologic fracture of the humerus. Id.

On September 21, 1998, Plaintiff underwent an MRI of his right upper extremity at St. Vincent's Medical Center, the results of which were, in part, moderate to advanced avascular necrosis of the humeral head and possible shoulder impingement with an intact rotator cuff. (Tr. 309). No medical evidence is present in the record from this point until approximately Plaintiff's date last insured, March 31, 2000.

### C. Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520. First, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). Claimant bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287, n.5 (1987).

In the instant matter, the ALJ determined Plaintiff met the nondisability requirements of the Act and was insured for benefits through March 31, 2000. (Tr. 12). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity at any time since the alleged onset date. Id. At step two, the ALJ held Plaintiff "had the following severe combination of impairments: degenerative disc disease of the cervical spine, status post

4

fusion at C5-6 in 1986, and avascular necrosis of the right shoulder (20 C.F.R. § 404.1520(c))." Id. At step three, the ALJ found Plaintiff did not have an impairment, or combination of impairments, that met or equaled any listed in Appendix 1, Subpart P, Regulations No. 4. Id. The ALJ determined Plaintiff retained the following RFC:

> [Plaintiff can] perform light work involving no crawling and no overhead reaching with the right dominant upper extremity. The [Plaintiff] should not work at heights and on ladders or scaffolds. The [Plaintiff] can occasionally lift and carry twenty pounds and frequently lift and carry ten pounds. The [Plaintiff] can stand and walk six hours out of an eight-hour workday and sit six hours out of an eight-hour workday.

(Tr. 12-13). The ALJ explained she did not give full credit to Plaintiff's allegations of pain. (Tr. 13-15). The ALJ found that while Plaintiff "experienced a degree of pain and discomfort, [ ] such has not been proven to be of disabling proportions and evidenced by the medical record and the [Plaintiff's] activities of daily living on or before his date last insured." (Tr. 15). At step four, the ALJ determined Plaintiff was "capable of performing [his] past relevant work as an outpatient receptionist." Id. Therefore, the ALJ determined Plaintiff was not disabled and did not proceed to step five. Id.

### III. ANALYSIS

#### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a

suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584, n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings).

### B. Issues on Appeal

Plaintiff essentially raises three issues on appeal. First, Plaintiff asserts the ALJ erred by failing to include all physical limitations in the hypothetical posed to the vocational expert at the hearing. (Doc. 9, p. 4). Second, Plaintiff asserts the ALJ provided insufficient reasons for discrediting his pain testimony. (Doc. 9, p. 6). Third, Plaintiff asserts the ALJ erred by failing to include any limitations with regard to mental health issues in the hypothetical posed to the vocational expert at the hearing. Id.

#### 1. Hypothetical Physical Limitations Posed to Vocational Expert

Plaintiff argues the ALJ erred by failing to include all pertinent physical limitations in Plaintiff's RFC in the hypothetical posed to the vocational expert (the "VE"). (Doc. 9,

6

p. 4). Specifically, Plaintiff argues (1) although the ALJ noted overhead reaching would be limited, the ALJ did not "quantify the amount of overhead reaching to constant, frequent, occasionally or never" and (2) the ALJ "did not include any limitations on [P]laintiff's ability to reach and handle although the [P]laintiff testified that he had difficulty with those tasks." (Doc. 9, pp. 4-5).

With regard to Plaintiff's argument regarding the specific amount of overhead reaching Plaintiff could do, a simple reference to the hearing transcript resolves the issue. In addition to other limitations, the ALJ asked the VE to consider a hypothetical person who "would be limited with respect to reaching over their, overhead with their dominant upper extremity . . . ." (Tr. 55). In response, the VE opined the hypothetical person could perform Plaintiff's past sedentary work as an outpatient receptionist. Id. Moments later, the ALJ changed the hypothetical and asked the VE to consider whether the same hypothetical person could perform the outpatient receptionist job "if there were no overhead reach[ing]." (Tr. 56). After consideration, the VE responded "even if it went to no overhead then no overhead is essentially of a clerk in a receptionist position." Id. A careful reading of the transcript shows the VE believed Plaintiff could perform his past relevant work as an outpatient receptionist even if Plaintiff could not reach over his head. Accordingly, this Court finds the issue regarding specifically how much overhead reaching Plaintiff could do was mooted by the VE's testimony that Plaintiff could perform his past relevant work without any overhead reaching; thus the ALJ's hypothetical was not in error.

Plaintiff also argues the ALJ erred by failing to include limitations on Plaintiff's ability to reach, handle, and finger in his hypothetical notwithstanding Plaintiff's

7

testimony regarding difficulty performing those tasks. (Doc. 9, pp. 4-5). According to the Dictionary of Occupational Titles, the outpatient receptionist position includes the following physical demands: frequent[3] reaching[4], frequent handling[5], and occasional[6] fingering.[7] (Tr. 56, Doc. 9, pp. 9-12). At the hearing, however, the VE testified the outpatient receptionist position, for all practical purposes, required frequent reaching, handling, and fingering. (Tr. 57). In response to cross-examination by Plaintiff's counsel, the VE also testified the outpatient receptionist position would be eliminated for someone who had a limited ability to frequently reach and handle with their dominant upper extremity.[8] Id.

Plaintiff is correct that case law in this circuit requires the ALJ to employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002); Pendley v. Heckler, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of

---

[3] Frequently is defined as "[a]ctivity or condition exists from 1/3 to 2/3 of the time." (Doc. 9, p. 10).

[4] Reaching is defined as "[e]xtending hand(s) and (a)rms in any direction." (Doc. 9, p. 11).

[5] Handling is defined as "[s]eizing, holding, grasping, turning, or otherwise working with hand or hands. Fingers are involved only to the extent that they are an extension of the hand." (Doc. 9, p. 11).

[6] Occasionally is defined as "[a]ctivity or condition exists up to 1/3 of the time." (Doc. 9, p. 10).

[7] Fingering is defined as "[p]icking, pinching, or otherwise working primarily with fingers rather than with the whole hand or arm as in handling." (Doc. 9, p. 11).

[8] References to the dominant upper extremity refer to the right arm as Plaintiff is right-handed. (Tr. 284).

8

a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. Pendley, 767 F.2d at 1561 (quoting Brenam v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)). However, an ALJ is not required to include in a hypothetical question, limitations that are not supported by the record or limitations the ALJ properly rejected. Bouie v. Astrue, 226 Fed.Appx. 892, 894 (11th Cir. 2007) (quoting Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1161 (11th Cir. 2004)). Further, the "hypothetical question posed by the ALJ may omit non-severe impairments." Loveless v. Massanari, 136 F.Supp.2d 1245, 1250-51 (M.D. Ala. 2001) (citing Pendley, 767 F.2d at 1563)).

Although Plaintiff correctly notes the ALJ did not include reaching, handling, and fingering restrictions in the hypothetical posed to the VE, this Court finds no error as the ALJ specifically found Plaintiff's testimony regarding his limitations not fully credible. Moreover, there is no record evidence demonstrating that prior to Plaintiff's date last insured, Plaintiff had any limitations with regard to reaching and handling. As noted above, an ALJ is not required to include limitations in a hypothetical where such limitations have been properly rejected by the ALJ or where the limitations are not supported by substantial record evidence. Accordingly, this Court finds no error in the hypothetical posed by the ALJ.

### 2. Pain Testimony and Credibility

Plaintiff summarily argues the ALJ erred in evaluating Plaintiff's subjective complaints of pain. (Doc. 9, p. 7). Specifically, Plaintiff alleges the ALJ gave insufficient reasons for discrediting Plaintiff's pain testimony. Id. Pain is a non-exertional impairment. Foote, 67 F.3d at 1559. The ALJ must consider all of a claimant's

9

statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part pain standard:

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, 67 F.3d at 1560. Pain alone can be disabling, even when its existence is unsupported by objective evidence. Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992). However, an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

To satisfy the first prong of the pain standard, the ALJ must determine that the record evidence establishes the existence of an "underlying medical condition." See Foote, 67 F.3d at 1560. Here, the ALJ specifically found the following combination of severe impairments: "degenerative disc disease of the cervical spine, status post fusion at C5-6 in 1986, and avascular necrosis of the right shoulder . . . ." (Tr. 12).

Once an underlying medical condition has been found, the relevant inquiry focuses on satisfaction of either the second or third prong of the pain standard. Implicitly relying on the third prong, Plaintiff believed his objectively-determined combination of medical conditions were of such severity that they could be reasonably expected to give rise to Plaintiff's pain. (Doc. 9, p. 6). After considering the record

evidence, the ALJ found "[Plaintiff's] medically determinable impairments could reasonably be expected to produce the alleged symptoms, but [Plaintiff's] statements concerning the intensity, persistence and limiting effects of [those] symptoms [were] not entirely credible." (Tr. 15).

After "the existence of a medically determinable . . . impairment[ ] that could reasonably be expected to produce the symptoms has been established," the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the symptoms . . . to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 96-7p. If the symptoms are not supported by objective evidence, this inquiry "requires the [ALJ] to make a finding about the credibility of the [Plaintiff's] statements about the symptom(s) and its functional effects." Id. As quoted above, the ALJ made this required credibility determination and found Plaintiff's testimony was not fully credible. (Tr. 15).

Where an ALJ decides to discredit a claimant's pain testimony, she must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Jones v. Dep't of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991); SSR 96-7p. Any such reason given by the ALJ must be based on substantial evidence. Id. Additionally, the Code of Federal Regulations sets forth seven factors that an ALJ should consider in addition to the objective medical evidence when assessing the credibility of the claimant's statements: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medications used to alleviate pain or other symptoms; (5) treatment other than

11

medication, received for relief of pain or other symptoms; (6) any measures, other than treatment, used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.[9] 20 C.F.R. §§ 404.1529(c); see also SSR 96-7p. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.

In the instant matter, the ALJ clearly set forth the legal standards to be applied and the reasons she discredited Plaintiff's pain testimony. (Tr. 13-15). According to the ALJ, the "record reveal[ed] that although [Plaintiff] ha[d] alleged an inability to work due to shoulder and back pain, the evidence [did] not establish he was precluded from all work on or before his date last insured . . . ." (Tr. 14). Although medical records are scarce prior to Plaintiff's date last insured, there is still evidence Plaintiff sought treatment for shoulder pain dating back to 1998. (See Tr. 309-313). Despite the right shoulder pain, Plaintiff still exhibited a full range of motion and appeared to be in no obvious distress. (Tr. 14, 313). Plaintiff testified he could not use his right arm due to shoulder pain (Tr. 45); however, Plaintiff also stated he was able to tend to his own personal needs (Tr. 15). Thus, the ALJ found Plaintiff's allegations of pain, and the resulting limitations, inconsistent with Plaintiff's activities of daily living prior to Plaintiff's date last insured. Id.

The record also establishes Plaintiff gave varying reasons as the cause of his

---

[9] Although the ALJ does not discuss each of the seven factors, this is not error as the Eleventh Circuit does not explicitly require discussion of all seven factors. French v. Massanari, 152 F. Supp. 2d 1329, 1338 n.6 (M.D. Fla. 2001) (holding that "it is not reversible error that the administrative law judge did not expressly mention the side effects of [the plaintiff's] medications in his credibility determination"); Bechtold v. Massanari, 152 F. Supp. 2d 1340, 1349 n.9 (M.D. Fla. 2001), aff'd, 31 Fed.Appx. 202 (11th Cir. 2001).

pain. At different times, Plaintiff claimed his pain resulted from lifting a heavy object (Tr. 311), from a fall (Tr. 313), from a roller skating injury (Id.), and being hit by a wave while swimming (Tr. 314). Finally, the ALJ noted that at the hearing, Plaintiff did not testify his pain kept him from working, but rather, Plaintiff testified "he has not attempted to work as his family would lose Veterans' Administration benefits if he had any income." (Tr. 14). It was therefore questionable whether Plaintiff was precluded from working because of disability, or whether Plaintiff had financial motivations for remaining unemployed.

In sum, this Court finds the ALJ properly considered Plaintiff's subjective complaints in light of the factors set forth above, but rejected Plaintiff's complaints as not credible to the degree alleged and articulated explicit reasons for her decision to discount them. Accordingly, this Court believes the ALJ appropriately performed her task of assessing credibility and therefore, declines to disturb the ALJ's determination that Plaintiff's subjective complaints of pain were not wholly credible.

### 3. **Mental Health Issues**

Plaintiff alleges the ALJ erred by failing to include any mental health limitations in the hypothetical posed to the VE. (Doc. 9, p. 6). Plaintiff is correct that the ALJ's hypothetical does not mention any restrictions resulting from Plaintiff's mental impairments. However, the ALJ did not find Plaintiff's mental impairments were severe and as noted above, the hypothetical posed to the VE need not contain references to non-severe impairments. Loveless, 136 F.Supp.2d at 1250-51 (citing Pendley, 767 F.2d at 1563). Accordingly, to determine whether the ALJ posed a proper hypothetical, the Court must determine whether there is substantial evidence to support the ALJ's

13

decision that Plaintiff's mental impairments were not severe.

At step two of the sequential analysis, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease of the cervical spine, status post fusion at C5-6 in 1986, and avascular necrosis of the right shoulder. (Tr. 12). At this step, the plaintiff has the burden of proving his impairments are severe. McDaniel v. Bowen, 800 F.2d 1026, 1030-31 (11th Cir. 1986). By definition, this inquiry is a "threshold" inquiry, and only the most trivial of impairments are to be rejected. In the Eleventh Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. Id. However, the severity of a medically ascertained disability "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). "At the second step . . . medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities." SSR 85-28.

Here, the Court finds Plaintiff's claims regarding his mental impairments to be without merit. At the hearing, Plaintiff testified he had sought treatment at the VA hospital since March 2000 for depression and anxiety. (Tr. 49). After a thorough review of the record, this Court is unable to find any record of mental health treatment, except for one notation in August 2006 — well after Plaintiff's date last insured — that Plaintiff suffered from organic anxiety disorder. (Tr. 503). In that notation, it is also reported Plaintiff's "anxiety remains well controlled." Id. Moreover, Plaintiff has not alleged any specific limitations caused by his mental impairments and the undersigned was unable

to locate any references to limitations during its review of the medical records. To classify an impairment as severe, there must be evidence in the record that shows the impairment will interfere with a claimant's work activities. See McCruter, 791 F.2d at 1547-48. Without any evidence showing how the mental impairments affected Plaintiff's ability to work, there is no basis for finding these impairments severe. Therefore, this Court finds the ALJ did not err in finding Plaintiff's mental impairments were not severe impairments and failing to include any reference to them in the hypothetical posed to the VE.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is hereby **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this  24th   day of June, 2009.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record